UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 2:05-CR-75 PS |
| | ) | |
| | ) | |
| KENNETH IVORY MATTHEWS | ) | |

## OPINION AND ORDER

Law enforcement officers found cocaine residue and marijuana residue in the trash outside Defendant Kenneth Ivory Matthews's home.  The officers also had an informant who told them that the home was being used for crack cocaine trafficking.  Based on this information, a search warrant was obtained yielding drugs and guns.  Matthews moves to suppress the evidence seized during the search claiming that the warrant was not supported by probable cause.  The Motion is denied.

## FACTUAL BACKGROUND

On April 28, 2005, Magistrate Judge Paul Cherry issued a search warrant for the residence located at 2658 Buchanan Street, Gary, Indiana.  The search warrant was based on an affidavit provided by Detective Michael L. Barnes of the Gary Police Department.  Detective Barnes obtained the warrant in his capacity as a Task Force Agent with the Gang Response Investigative Team (GRIT), which is an FBI-led task force composed of federal, state and local law enforcement officers who investigate violent crime and drug crimes in northwest Indiana.  (*See* Barnes Aff. ¶ 1.)

The affidavit made the following observations pertinent to our discussion here.  First, it reviewed the outcomes of two trash pulls from 2658 Buchanan Street in Gary.  Regarding the

initial trash pull made on April 14, 2005, GRIT task force officers found U.S. mail addressed to Matthews (along with mail addressed to Latoya Glover) and "[r]esidue and evidence of 'rolled blunts' or marijuana cigars[.]" (*Id.* ¶ 14.)  About .6 grams of suspected marijuana was recovered from the garbage and field tested positive for the presence of marijuana. (*Id.*)  The second trash pull, conducted on April 20, 2005, resulted in GRIT investigators finding a clear ziplock plastic bag, which "contained a white powdery residue and white powdery granules[,]" and a red knotted plastic bag, which "contained white powdery granules and a white plastic bag[.]" (*Id.* ¶ 15.)  The residue in both plastic bags field tested positive for the presence of cocaine. (*Id.*)  Detective Barnes noted in his affidavit that "[o]ne of the plastic bags . . . could easily contain up to one kilogram of cocaine." (*Id.* ¶ 16.)  A green plant material, including stems and seeds, was also found during the second trash pull. (*Id.*)  One of the stems field tested positive for the presence of marijuana. (*Id.*)

Second, the affidavit described information from a Confidential Witness (CW1), who had provided information to the FBI on at least 25 occasions. (*Id.* ¶ 7.)  The affidavit further stated that CW1's information had been corroborated through independent investigative actions including surveillance, interviews and trash searches. (*Id.*)  According to Detective Barnes, CW1 told GRIT agents on February 22, 2005, that an individual known as "Kenny I" maintained a residence at 2658 Buchanan Street, Gary, Indiana. (*Id.* ¶ 9.)  Although CW1 originally believed that "Kenny I" lived at a different location in Gary, CW1 came into subsequent information that he passed on to Detective Barnes that revealed that "Kenny I" in fact lived at the 2658 Buchanan location. (*Id.* ¶¶ 8-9.)

On March 30, 2005, CW1 also advised GRIT agents that he/she had visited 2658 Buchanan Street in Gary, Indiana in December 2004 and that he/she had observed at this time a "laboratory-type setup in the basement" of that location, where "Kenny I" cooked and stored cocaine. (*Id.* ¶ 10.) CW1 further stated on April 3, 2005, that an associate of Matthews named Tambora Winters had told CW1 that Winters planned to "pick up some crack cocaine from Mathews [sic]." (*Id.* ¶ 12.) In addition, on April 14, 2005, CW1 told GRIT agents that he and Winters had a conversation, from which CW1 inferred that Winters and Matthews were taking drugs to Illinois, where they "had money waiting for them[.]" (*Id.* ¶ 13.)[1]

Based on the foregoing, on April 28, 2005, Magistrate Judge Cherry signed a search warrant for the residence at 2658 Buchanan Street, Gary, Indiana. On May 5, 2005, Matthews was taken into custody for an alleged civil arrest warrant through the Lake County Sheriff's Department, and the search warrant was executed later that day. Based upon the evidence recovered during the search, Matthews was indicted with three counts of possession with intent to distribute a controlled substance and one count of possession of firearm in furtherance of a drug trafficking crime.

## DISCUSSION

Matthews argues that the information contained in Detective Barnes's affidavit supporting the warrant issued by Magistrate Judge Cherry was insufficient to establish probable cause. Specifically, Matthews claims (1) that the lengths of time between certain events caused the information or evidence to become stale; (2) that the CW1 was not a credible witness; and

---

[1] The affidavit also had a passing reference to a second CW, but provides no information about how CW2 came into his/her information. (Barnes Aff. ¶ 11.)

(3) that the trash pulls resulted in evidence of only marijuana and cocaine use, which did not establish probable cause for a laboratory type drug operation. (*See* Def.'s Mem. Supp. Mot. to Suppress 5-6.)

Prior to addressing the substance of Matthews's motion, the Court must first address whether Matthews was entitled, as he claims, to an evidentiary hearing on his Motion to Suppress. At the hearing, the Court held that Matthews was not entitled to an evidentiary hearing and allowed oral argument only. Matthews did not make a *prima facie* showing of a factual dispute, which is the purpose of an evidentiary hearing. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("Because the purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes."). Indeed, when challenging whether a search warrant is supported by probable cause, the Court must simply review the warrant and make a determination of whether the affidavit in support of the warrant establishes probable cause. *See United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) ("When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit.").[2] Because Matthews did not identify any factual disputes that would necessitate an evidentiary hearing, his request for such a hearing was denied.

Matthews also made a passing allegation that information in the affidavit may have been false. We treat this allegation as a request for a *Franks* hearing. To be entitled to a *Franks*

---

[2] Even if an affidavit does not establish probable cause, the evidence will not be suppressed if the officers were acting in good-faith reliance on a facially valid warrant. *See United States v. Leon*, 468 U.S. 897, 923-24 (1984). The government has not relied on the *Leon* good-faith exception, and therefore, we do not address it here.

hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and must show that the false statement was essential to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Matthews made no such showing. *See United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998) (affirming the district court's denial of defendant's request for a evidentiary hearing on a motion to suppress when "he simply states that the testimony in support of the search warrant was insufficient, inaccurate, and stale").

Therefore, the Court analyzes the contents of the affidavit in support of the search warrant to determine if it establishes probable cause. Because the Court finds that the two trash pulls described in the affidavit established sufficient probable cause for the issuance of the search warrant and that the evidence obtained from the trash pulls were not stale when the Magistrate Judge issued the warrant, Defendant Matthews's Motion to Suppress is denied.

**I. The Warrant was Supported by Probable Cause**.

When, as in this case, the affidavit is the only source of probable cause presented to the magistrate judge for a search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *Peck*, 317 F.3d at 755-56. This Court, when reviewing the magistrate judge's finding of probable cause in the affidavit, accords the magistrate judge "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Under this standard, this Court will only assess whether the magistrate judge had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

The Supreme Court has held that the Fourth Amendment is not violated when the police search a person's trash left on the street for collection. *See California v. Greenwood*, 486 U.S. 35, 39-41 (1988). Matthews does not argue or provide any facts that the trash pulls themselves violated his constitutional rights. As such, this Court presumes that the evidence from the warrantless trash pulls were properly obtained.

Matthews, however, does argue that the cocaine residue and marijuana evidence from the trash pulls, "does not support the conclusion that a laboratory type operation was in existence at the premises [searched,]" or support the issuance of a search warrant, particularly "of this scope and magnitude[.]" (Mem. Supp. Def.'s Mot. to Suppress 5.) But the magistrate judge, when issuing a search warrant, must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (citation omitted); *see also United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000) ("'Probable cause requires only a probability or a substantial chance of criminal activity not an actual showing of such activity.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983))). Or in other words, "[p]robable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Peck*, 317 F.3d at 756.

Here, even if the cocaine residue and marijuana may be more indicative of drug possession, as argued by Matthews, the evidence also demonstrates a "fair probability" of drug trafficking – or "induces a reasonably prudent person to believe that a search will uncover

6

evidence" of drug trafficking – particularly when compounded by evidence that the cocaine residue was found in plastic bags that could have originally contained up to one kilogram of drugs.  Accordingly, evidence of drug activity obtained from trash pulls, particularly when the drugs are enclosed in what appears to be plastic packaging, is sufficient to establish probable cause for a search warrant seeking evidence of a drug trafficking operation.  *See United States v. Briscoe*, 317 F.3d 906, 907-08 (8th Cir. 2003) (concluding that the search warrant application "would have been sufficient without the challenged statements because the marijuana seeds and stems recovered from [defendant's] garbage were independently adequate to establish probable cause"); *United States v. Lawrence*, 308 F.3d 623, 626, 627 (6th Cir. 2002) (agreeing with the district court that, even if witness's statements were deleted from the search warrant affidavit, "the remaining information, [which included the discovery of plastic bags containing wrappers with cocaine residue,] obtained through the search of [defendant's] trash supplied sufficient probable cause for the search warrant").

   Matthews further claims that the identity of both substances were determined by only field tests and that "[n]either substance was analyzed by a duly qualified drug analyst."  (Mem. Supp. Def.'s Mot. to Suppress 6.)  A field test on items pulled from the trash is sufficient when applying for a search warrant.  *See Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 971 (7th Cir. 2003) (holding that "[t]he officers had no duty to send the garbage items to a lab before applying for a warrant[,]" and that there was no evidence that the officer "thought the field tests were unreliable when he applied for the warrant").  Here, Matthews has presented no evidence that any of the investigators believed that the field tests were unreliable.  Therefore, the investigators appropriately used the results from the field tests when applying for the search warrant.

Despite the sufficiency of evidence for probable cause simply from the trash pulls, the affidavit also contains statements from a confidential witness. When an informant's information is included in an affidavit to establish probable cause, the court should evaluate the informant's credibility by considering the following factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). Courts should also consider "whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity." *Id.*

Under this standard, the Court finds that the CW1's credibility is adequate to substantiate the probable cause already established by the trash pulls.[3] The affiant noted that CW1 had provided the GRIT task force with information at least 25 times since February 2005. (*See* Barnes Aff. ¶ 7.) The information provided by the witness regarding drug trafficking was corroborated independently by the trash pulls. (*See id.* ¶¶ 14-16.) It is true that the informant told investigators on March 30, 2005 about a "laboratory-type setup in the basement" of the premises searched during a visit in December 2004 (*id.* ¶ 10) and that some of the informant's statements stemmed from conversations with one of Matthews's associates (*id.* ¶¶ 8, 12-13). Nevertheless, when examining the totality of the circumstances – primarily the evidence of the

---

[3] Matthews criticizes the information provided by CW2 as unreliable. (Barnes Aff. ¶ 11.) The Court agrees that the affidavit furnishes no information to substantiate CW2's reliability or credibility, and accordingly, discounts statements referring to CW2 in the affidavit.

trash pulls plus the informant's statements – this Court finds that the affidavit provides sufficient evidence to support the magistrate judge's finding of probable cause. *See Koerth*, 312 F.3d at 867-68 ("Statements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence.").

## II.     Evidence from Trash Pulls Were Not Stale When Search Warrant Signed.

Matthews claims that probable cause is not established because of the eight-day wait between the second trash pull and the issuance of the search warrant. (Def.'s Mem. Supp. Mot. to Suppress 6-7.) The Court finds little merit in this argument. The evidence discovered in the trash pull (cocaine in a plastic bag indicative of packaging) may signal a drug trafficking operation, and therefore is not too stale after an eight-day time lag for the issuance of the search warrant. *See United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999) ("Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." (quoting *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992))); *United States v. McNeese*, 901 F.2d 585, 597 (7th Cir. 1990), overruled on other grounds by *United States v. Westmoreland*, 240 F.3d 618 (7th Cir. 2001) (permitting a seven-month lag between informant's last drug pick-up and issuance of search warrant when "other factors indicate that the information is reliable and that the object of the search will still be on the premises"). Furthermore, the age of the evidence is "only one factor that magistrates should consider in determining whether probable cause exists[.]" *Spry*, 190 F.3d at 836. Again, under the totality of the circumstances, this Court finds that the affidavit supported a finding of probable cause and accordingly, the issuance of the search warrant.

## CONCLUSION

The Defendant's Motion to Suppress [ Doc. 19] is therefore **DENIED.**

**SO ORDERED.**

ENTERED: November 1, 2005

                                              s/ Philip P. Simon
                                              PHILIP P. SIMON, JUDGE
                                              UNITED STATES DISTRICT COURT